# Heimbecker v. Drudge

130 ·

*Susan M. Heimbecker, Ronald Isgate* and *Lawrence H. Fisher,* for plaintiffs.

*Gregory J. Samurovich* and *John P. Mueller,* for defendants.

RAU, *J.*, January 31, 2011—

## I. INTRODUCTION

During Justice Samuel Alito's[1] Supreme Court confirmation hearings, appellant Mr. H. Gerard Heimbecker wrote to President George W. Bush, the entire Senate Judiciary Committee and appellee Matt Drudge of The Drudge Report that Mr. Heimbecker had requested the entire Third Circuit, including then-Judge Alito, to recuse from hearing his appeal and that Justice Alito had not disclosed this general recusal request on his judicial questionnaire for the Supreme Court. Appellant Mr. Heimbecker requested that appellee Mr.

---

1. The court will refer to "Justice Samuel Alito" throughout this opinion although he served as a Judge in the United States Court of Appeals for the Third Circuit at the time of the events that are the subject of this case.

Drudge help him publicize the matter and also posted the information on his own website. After Mr. Heimbecker's repeated contacts, the Drudge Report released an article in an online news outlet, entitled "Teddy's Last Gasp on Alito", reporting that Senator Kennedy's aide criticized Justice Alito about the alleged omission and that Mr. Heimbecker's later complaint of judicial misconduct. The article quoted a Capitol aide who said, "The individual who filed this complaint is clearly a serial litigant. It will be interesting to see how far the Democrats will push this and what the mainstream media will make of it."

Upon learning of the error, Justice Alito promptly amended his judicial questionnaire. The Third Circuit judicial council dismissed the judicial misconduct complaint finding that the omission was not intentional but caused by the clerk's office providing Justice Alito with an incomplete list of cases involving recusal motions brought against him. Judicial council of the Third Circuit, mem. op., J.C. No. 06-04, Jan. 26, 2006, 5-6 (attached to def.'s mot. for summ. J. as Exhibit I). The general nature of Mr. Heimbecker's recusal motion being against every judge on the entire Third Circuit rather than against Justice Alito individually, resulted in the case being omitted from the computer generated listing of recusal cases. *Id.* Justice Alito was subsequently confirmed as a United States Supreme Court Justice by a Senate majority on January 31, 2006.

Appellant Heimbecker then sued appellee Matt Drudge claiming that the article's "serial litigant" quote was defamatory and that the article implied he was a "political tool" of Senator Kennedy. Significantly, shortly after the article's publication and prior to his defamation claim, Mr. Heimbecker published a press release directing the public

to the very article that he now claims was defamatory.

This court granted summary judgment in favor of Mr. Drudge because Mr. Heimbecker failed to produce evidence that the statements in The Drudge Report were false, written with actual malice, defamatory, or damaging to Mr. Heimbecker. Mr. Heimbecker appeals here that grant of summary judgment.

Constitutional law requires that a limited-purpose public figure in a defamation action prove falsity and "actual malice" by clear and convincing evidence in order to prevail. Mr. Heimbecker became a public figure by creating a controversy over Justice Alito's alleged omission of his recusal request and by publicizing the fact that he filed a judicial misconduct complaint against Justice Alito. In addition, Mr. Drudge is a media defendant who was reporting on one of the most important issues to the public at the time: the confirmation of a justice to a lifetime appointment on our nation's highest court. Mr. Heimbecker failed to produce any evidence, much less the required clear and convincing evidence, that the statements at issue are false or that they were published with "actual malice." Mr. Gerard Heimbecker admits that he has been involved in litigation for over 40 years and that the alleged defamatory statements were only published after he contacted the defendant, Mr. Drudge, to ask for his help in making the subject matter of the article public.

Summary judgment is also appropriate because the quote by the Capitol staffer that Mr. Heimbecker is a "serial litigant" is not susceptible to a defamatory meaning, and the article does not state or imply that Mr. Heimbecker is a "political tool" of Senator Kennedy. Finally, Mr.

Heimbecker's own evidence shows that he has not been harmed by the publication, barring his recovery of punitive damages.

Since Mr. Heimbecker failed to meet the minimum burden of evidence to prove defamation, this court was legally required to grant Mr. Drudge's motion for summary judgment. The appeal should be denied and the grant of summary judgment affirmed.

## II. FACTS[2]

### A. *The Drudge Report Article*

Mr. Heimbecker commenced this action for libel and defamation based on an article published on the internet by defendant Matt Drudge on January 20, 2006 (Def.'s mot. for summ. J. and pl.'s response, ¶¶ 3-7). The complete article, entitled "Drudge Exclusive: Teddy's Last Gasp On Alito" read as follows:

The Drudge Report has learned Sen. Ted Kennedy's (D-MA) office is behind a last ditch effort to stop Judge Samuel A. Alito's confirmation before next week's vote using a 2004 recusal request.

The Drudge Report has obtained a complaint filed by H. Gerard Heimbecker of Upper Darby, PA accusing Alito of not properly listing the *Heimbecker v. 555 Associates* case in his Senate questionnaire.

---

2. Assertions in Mr. Heimbecker's pleadings constitute admissions by Mr. Heimbecker. See Ohlbaum on the Pennsylvania Rules of Evidence § 803.25 Cmt. [12][b],[e] (relating to admissions by attorneys as agents. See also *Tops v. Rothman*, 244 A.2d 436, 438 (Pa.1968) (admissions in pleadings "cannot later be contradicted"); *Harkins v. Calumet*, 614 A.2d 699, 709 (Pa. Super. 1992) ("[P]leadings are admissible as admissions of the verifying party.").

134

Kennedy legal aide James Flug is behind the efforts to push this latest attack. The veteran aide has been criticized for Sen. Kennedy's misfires during the Alito hearing last week. Flug was reportedly behind the attacks Kennedy used against Alito related to the Concerned Alumni of Princeton (CAP) and Vanguard recusal case.

In the 2004 case, Mr. Heimbecker not only filed a request for Alito to recuse himself but also the entire Third Circuit as well.

One Capitol Aide aware the [sic] situation challenged Mr. Heimbecker's credibility. *"The individual who filed this complaint is clearly a serial litigant.* It will be interesting to see how far the Democrats will push this and what the mainstream media will make of it."

Developing... (Pl.'s third am. compl., August 17, 2009, ex. four; def.'s mot. for summ. J. and pl.'s resp., ¶6) (emphasis added).

It is undisputed that the article "reported on a complaint filed by Mr. Heimbecker with the Judicial Council of the Third Circuit alleging that The Honorable Samuel A. Alito, then a United States Circuit Judge for the United States Court of Appeals for the Third Circuit who had been nominated to be an Associate Justice of the Unites States Supreme Court, was guilty of judicial misconduct" (Def.'s mot. for summ. J. and pl.'s resp., ¶5.).

Mr. Heimbecker admits that Mr. Drudge is a media defendant: "The defendant Drudge, at all times herein mentioned, was the author and publisher of an online news report known as the Drudge Report," and that at

all times, Drudge "identified himself as a news reporter"[3] (Pl.'s third am. compl., ¶¶ 6, 7, 9; def.'s answer to pl.'s third am. compl. ¶7.).

## B. *Mr. Heimbecker's Litigation History*

Mr. Heimbecker describes himself as a "seventy-four year old retired businessman who, for any number of reasons, has been involved in some litigation over the past four decades" (Pl.'s supplemental resp. tod.'s mot. for summ. J., 3). Mr. Heimbecker's own descriptions of the civil complaints and judicial proceedings that he has been involved in spans eight pages of his complaint (Pl.'s third am. compl., ¶¶ 37-75).

Mr. Heimbecker admits that from at least 1980 to 2000 he litigated various lawsuits relating to RICO claims, contract disputes, and business matters (Pl.'s supplemental resp. to def.'s mot. for summ. J.). As described below, he has litigated matters in state courts including the Pennsylvania Court of Common Pleas in Montgomery, Philadelphia, and Delaware Counties (Def.'s mot. for summ. J. and pl.'s resp., ¶¶41, 45 47-49, 73). He has been a party to lawsuits in federal courts including the District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and even the United States Supreme Court (Def.'s mot. for summ. J.

---

3. Mr. Heimbecker attempts to back track on these assertions in his response to Drudge's Motion for Summary Judgment, stating "defendant only claims to be a news reporter. Plaintiff has to [sic] right to challenge the status of defendant as a reporter through additional discovery and submission of expert reports." (Pl.'s Resp. to Def.'s Mot. For Summ. J., ¶ 2) However, after the discovery deadline passed, Mr. Heimbecker failed to produce evidence that Mr. Drudge was not a news reporter. Mr. Heimbecker goes on to say that "The defendant was required to follow the guidelines of the profession as a reporter by investigating and properly reporting all the facts." (Pl.'s Third Am. Compl., ¶¶ 22-23.)

and pl.'s resp., ¶¶ 38-39, 40).

Some of the matters that Mr. Heimbecker litigated are related. From 1976 to 1994 Mr. Heimbecker was a tenant in a building owned by 555 Associates (Pl.'s third am. compl., ¶ 37). After his lease was terminated, Mr. Heimbecker admits that he initiated several administrative complaints and lawsuits against various parties associated with the property (*Id.*, ¶¶37, 39, 40-46).

Mr. Heimbecker first "filed private criminal complaints against three leasing agents and/or managers of the 555 Property" in the Montgomery County Court of Common Pleas. *Heimbecker v. 555 Associates*, 2003 U.S. Dist. LEXIS 6636, *18 (E.D. Pa. 2003) (citing *Com. v. Kleiman,* 694 A.2d 1119 (Pa. Super. 1997)). When the court found them "not guilty," Mr. Heimbecker "filed a notice of appeal to the Montgomery County Court of Common Pleas" which that court "found frivolous and dismissed with prejudice." *Id.* The Montgomery County Court of Common Pleas also ordered Mr. Heimbecker and his counsel [who was later named as a defendant in *Heimbecker v. 555 Associates*] to pay the defendants' attorneys fees. *Id.* at *19. Mr. Heimbecker filed a motion to vacate the order to pay attorney fees which the Montgomery County court denied. *Id.* He then appealed the denial of the motion to vacate to the Superior Court of Pennsylvania which quashed the appeal for lack of standing. *Id.*

The defendants in the 2003 Montgomery County action (Mr. Mulartrick and Mr. Rementer) then sued Mr. Heimbecker and his daughter Susan Heimbecker

for malicious prosecution and criminal conspiracy.[4] *Id.* at *19 (citing *Mulartrick v. Heimbecker*, 34 Pa. D. & C. 4th 432 (Pa. Com. Pl. 1996)).[5] The Montgomery County Court of Common Pleas entered a default judgment against the Heimbeckers, denied the Heimbeckers' subsequent motions for reconsideration and observed that "the Heimbeckers' overall conduct demonstrated 'a clear disregard for the authority of the court as an institution for determining and enforcing rights.'" *Id.*

The Heimbeckers' insurance company ultimately reached a settlement agreement with Mr. Mulartrick and Mr. Rementer for which the company did not need the Heimbeckers' consent. *Id.* at *20-*21 (citing *Mulartrick v. Heimbecker*, 731 A.2d 203 (Pa. Super. 1998)). "Apparently perceiving [their insurance company's] decision to settle the case without their approval as a profound injustice, the Heimbeckers then embarked upon what has proven to be something of a crusade." *Id.* at *21.

The Heimbeckers appealed the settlement agreement to the Superior Court of Pennsylvania which affirmed the trial court. *Id.* In denying the appeal, the Superior Court stated:

> [W]e find it necessary to mention appellants' disregard for the dignity of our judicial system. In both their initial and reply briefs, appellants accuse Appellees, without evidentiary support, of such misdeeds as "engaging in a pattern of criminal activity that includes corruption of a state commission, corruption of a judge, obstruction of justice, perjury and insurance fraud." They also assert

4. Ms. Susan Heimbecker acted as counsel in the matter before this court.
5. See also Pl.'s Third Am. Compl. and Def.'s Resp., ¶ 47.

that the "not guilty" verdict in the underlying criminal action was "fixed."

...

Our courts are not forums for parties to hurl unsupported assertions, rather, we rely upon evidence to substantiate claims and support rulings....Lest appellants fantasize that this court is also conspiring against them, we note that we have invested more time than required upon their appeal by addressing claims that were waived and/or moot...If [the Heimbeckers] were members of the bar, we would certainly consider referring this matter to the disciplinary board. *Heimbecker v. 555 Associates*, 2003 U.S. Dist. LEXIS 6636, *21-*22 (E.D.Pa. 2003) (citing *Mulartrick v. Heimbecker*, 731 A.2d 203 (Pa. Super. 1998)) (emphasis added).

Finally, Mr. Heimbecker brought a lawsuit against Mr. Mulartrick and Mr. Rementer in the Court of Common Pleas of Delaware County, which was removed to the District Court for the Eastern District of Pennsylvania and heard as *Heimbecker v. 555 Associates*, Judge Legrome Davis presiding. 2003 U.S. Dist. LEXIS 6636, *25. In *Heimbecker v. 555 Associates*, Mr. Heimbecker asserted breach of contract claims and violations of the Federal Racketeer Influenced and Corrupt Organizations (RICO) Act, along with two independent motions for Judge Davis' recusal. All were dismissed or denied. *Id.* at *2-*6, *30, *41, *60 (Pl.'s third am. compl., ¶72.).

The defendants in *Heimbecker v. 555 Associates* collectively filed four motions to dismiss Mr. Heimbecker's claims and a joint "motion to preclude plaintiff from Commencing Further Actions" (motion to

preclude). 2003 U.S. Dist. LEXIS 6636 at *2,*56, *60. The motion to preclude requested that Judge Davis "enter an order prohibiting [plaintiff] from filing additional actions against [defendants] based on the underlying events without first seeking and obtaining leave of court." *Id.* at *2-*3, *56 (citation omitted). Although Judge Davis denied the motion, he observed,

> A number of factors weigh in favor of entering an injunction of this nature against plaintiff. Perhaps most significantly, plaintiff has demonstrated a persistent and profound lack of respect for the judicial system.
>
> ...
>
> Plaintiff is apparently unwilling or unable to curb his irreverent behavior. As one example among many in the instant matter, despite having actual notice of the scheduled time and place for oral argument, plaintiff simply failed to appear.
>
> ...
>
> Plaintiff's willingness to respect this court may not be conditioned upon this court's acquiescence to his wishes.
>
> ...
>
> Plaintiff has also demonstrated a penchant for perceiving unconnected and innocuous facts and events through a highly conspiratorial lens, resulting in factual allegations which are often offensive and which frequently border on the absurd. . . . Clearly, it is not unreasonable to recognize the possibility that, in response to this Memorandum and order dismissing

plaintiff's complaint, plaintiff may simply proceed to file another action in this or some other court based upon utterly unsubstantiated allegations." *Id.* at *58-*61.

During the course of the litigation in *Heimbecker v. 555 Associates*, Mr. Heimbecker filed two motions to recuse Judge Davis (Def.'s mot. for summ. J. and pl.'s resp., ¶38; Pl.'s third am. compl. ¶¶ 73-75.). Mr. Heimbecker filed the first motion in May 2002. 2003 U.S. Dist. LEXIS 6636, *5 (E.D.Pa. 2003). Judge Davis denied this motion and Mr. Heimbecker's subsequent motion for reconsideration. *Id.* at *6. "After the first recusal motion [in *Heimbecker v. 555 Associates*] was denied, plaintiff filed a petition for Writ of Mandamus with the United States Court of Appeals for the Third Circuit" which was denied. *Id.*, at *7-*8 (citing judgment and opinion of Third Circuit Court of Appeals, No. 02-3046, Nov. 2002).[6] Mr. Heimbecker then filed a petition for panel rehearing which was also denied. *Id.* at *8. Although "[Justice Alito] was one of the judges who considered the petition for rehearing," the petition was submitted to the Third Circuit as a whole. Third Circuit Mem. Op. No. 06-04, Jan. 2006, 3.[7] Two days after the Third Circuit denied Mr. Heimbecker's petition for panel rehearing, Mr. Heimbecker filed a second recusal motion against Judge Davis in January 2003 which was denied. 2003 U.S. Dist. LEXIS 6636, *8, *60 (E.D.Pa. 2003).

Mr. Heimbecker then unsuccessfully appealed Judge

---

6. See also Def.'s Mot. for Summ. J., and Pl.'s Resp., ¶39.

7. Mr. Heimbecker admits and agrees that Third Circuit Judicial Council Memorandum opinion No. 06-04 (attached to Def.'s Mot. for Summ. J. as Exhibit I) disposed of his judicial misconduct complaint against Justice Alito (Def.'s Mot. for Summ. J. and Pl.'s Resp., ¶¶ 66-67). Accordingly, Mr. Heimbecker admits that the opinion refers to Mr. Heimbecker as "Complainant," and to Justice Alito as "Respondent."

Davis' order granting the defendants' motions for summary judgment to the Third Circuit. See *Heimbecker v. 555 Associates*, 90 Fed. Appx. 435 (3d Cir. Pa. 2004).

C. *Mr. Heimbecker's Recusal Motions and Judicial Misconduct Complaint.*[8]

After *Heimbecker v. 555 Associates* concluded in the federal district court, Mr. Heimbecker filed another recusal motion but this time it was directed to the entire Third Circuit because of earlier decisions denying Mr. Heimbecker's motions to disqualify Judge Davis and the alleged relationship of a witness to a senior judge on the Third Circuit. Third Circuit Mem. Op. No. 06-04, Jan. 2006, 2-3. Then-Judge Alito, along with Judges McKee and Cowen, comprised the panel that decided Mr. Heimbecker's motion to recuse the entire Third Circuit. *Id.* at 3. The panel ruled that a recusal request must be decided by each judge individually but denied the request as to themselves and affirmed the district court's dismissal of Heimbecker's civil action. *Id.* at 3 (See also Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. Ex. G).

In November 2005[9] Justice Samuel Alito was nominated to the United States Supreme Court.

Mr. Heimbecker filed a judicial misconduct complaint against Justice Alito in January 2006 (Def.'s mot. for summ. J., and pl.'s resp., ¶ 68.). The complaint alleged

---

8. Mr. Heimbecker provides a convoluted explanation of the facts underlying his recusal request against Justice Alito (Pl.'s Third Am. Compl., ¶¶ 75-76). The court therefore relies on the record as a whole, including the Third Circuit Judicial Council's opinion, to reconstruct the facts of Mr. Heimbecker's alleged request for Justice Alito's recusal.

9. See Biographical Directory of Federal Judges, Federal Judicial Center, available at http://www.fjc.gov/servlet/nGetInfo?jid=26&cid=999&ctype=na&instate=na (last accessed January 27, 2011).

that Justice Alito "intentionally failed to disclose his participation in the appeal of *Heimbecker v. 555 Associates* in his responses to a Senate Judiciary Committee questionnaire." *Id.*

In contrast to Mr. Heimbecker's "intentional omission" theory, the Third Circuit Judicial Council explained that due to a computer coding error, Mr. Heimbecker's general Third Circuit recusal request was not disclosed to Justice Alito when he attempted to complete his judicial questionnaire. The council stated,

> [Justice Alito] asked the Clerk's Office of the court of appeals for a list of all cases in which he considered a motion to recuse. Because of a mistake in the Clerk's Office's computer coding system, [Mr. Heimbecker's] case - which did not allege any conflict of interest pertaining to [Justice Alito] aside from his membership on the court - was not included. [Justice Alito] has since amended his answer to the Committee's question to include complainant's case. Third circuit mem. op. No. 06-04, Jan. 2006, 5-6 (attached to def.'s mot. for summ. J. as Ex. I) (footnotes omitted).

The Third Circuit dismissed Mr. Heimbecker's complaint against Justice Alito as *"not cognizable under the [judicial misconduct] statute and legally frivolous or lacking sufficient evidence* to raise an inference of misconduct." *Id.* at 4, 5 (emphasis added). It also noted that Mr. Heimbecker's complaint against Justice Alito was the third time Mr. Heimbecker brought a complaint against a judge (presiding over a matter being litigated by Mr. Heimbecker) for information that the judge disclosed during Senate confirmation. *Id.* at 3-4.

D. *Mr. Heimbecker's Efforts to Publicize His Judicial Misconduct Complaint Against Justice Alito*

Before Mr. Drudge ever published the Drudge Report article at issue, Mr. Heimbecker reached out to numerous parties and the general public about Justice Alito's alleged recusal omission and the judicial misconduct complaint. After the Drudge Report article was published, and after Mr. Heimbecker had read it, he continued to reach out to Mr. Drudge and even drafted a press release which directed the general public to the Drudge Report article - the very article which he now claims has defamed him.

Mr. Heimbecker found out about, and began to publicize Justice Alito's alleged omission as early as December 2005, after discovering that his general Third Circuit recusal request did not appear in Justice Alito's Senate questionnaire. In a December 9, 2005, letter to Justice Alito's he wrote, in part:

Question 23 from the Senate Judiciary Questionnaire reads, in part, as follows:

Please provide a list of any instance during your tenure on the Third Circuit that there has been a request for you to recuse yourself from a case, motion, or matter, or when you have otherwise considered recusing yourself from a case, motion, or matter.

As a litigant, who had filed several motions for your recusal, I was anxious to review your answer to Question 23. You listed 23 cases, from 1990 to 2005. You failed to include *Heimbecker v. 555 Associates,* 03-2180 (3rd Cir. 2004). To confirm that 03-2180 is a case that should have been on your list but was omitted from your answer, the docket in 03-2180 reflects your

order as follows:

"2/9/04 order (Alito, Authoring Judge, McKee and Cowen, Circuit Judges) denying motion by Pro Se appellant H. Gerard Heimbecker to Disqualify the Third Circuit because each judge must decide individually whether to recuse. Judges Alito, McKee and Cowen do not recuse, filed. (ghb)"

Your list of 23 cases included both serious and frivolous cases. If 03-2180 was a frivolous case, it would have been included. There can only be two possibilities to explain your failure to include 03-2180 in your answer. Either you forgot or you didn't forget.

...

With all due respect, if in fact you actually forgot all of the above, then I respectfully suggest you seek medical attention (Def.'s resp. to pl.'s mot. for partial summ. J. Ex. G).

Mr. Heimbecker filed his judicial misconduct complaint against Justice Alito on January 17, 2006 (Pl.'s am. compl., may 26, 2009, Ex. Three, Pl.'s email and press release dated January 26, 2006; Pl.'s resp. to def.'s mot. for summ. J., ¶¶ 65, 68).

Mr. Heimbecker took extensive steps to notify many people of what he believed was an issue relevant to Justice Alito's confirmation to the Supreme Court. In early January 2006, Mr. Heimbecker forwarded a copy of the letter he sent to Justice Alito (or one that was substantially similar) to then President George W. Bush and the United States Senate Committee on the Judiciary (in addition to Mr. Drudge) to inform them of the alleged omission and

the judicial misconduct complaint he had just filed against Justice Alito (Pl.'s third am. compl., ¶¶ 26, 27, Ex. Three; Def.'s resp. to pl.'s mot. for partial summ. J., Ex. H, K).

"On December 21, 2005, plaintiff contacted defendant regarding the confirmation process of then United States Supreme Court Justice Nominee Samuel Alito" (Pl.'s mem. of law in support of pl.'s mot. to strike def.'s objections to pl.'s interrogs, and request for production of documents, introduction). Then, on January 17, 2006 Mr. Heimbecker sent Mr. Drudge a copy of the judicial misconduct complaint. *Id.* Mr. Heimbecker's admits that he contacted Mr. Drudge because he wanted Mr. Drudge to "help the [Mr. Heimbecker] in disclosing important information to the public in a professional and journalistic manner..." (Pl.'s third am. compl., ¶ 22).

The allegedly defamatory article was published in the Drudge Report on January 20, 2006. (Def.'s mot. for Summ. J. and pl.'s response, ¶¶ 3-7) Thus, Mr. Heimbecker began contacting Mr. Drudge well before the Drudge Report article was published on January 20, 2006 (Def.'s mot. for summ. J., pl.'s resp. ¶¶ 3-7). Mr. Heimbecker admits that "the defendant did not contact the plaintiff" (Pl.'s third am. compl. and def.'s answer, ¶15). (emphasis in original). Mr. Drudge likewise admits "he has never been in contact with the plaintiff." *Id.*

After January 20, 2006, Mr. Heimbecker continued to contact Mr. Drudge requesting that he publicize additional information about the matter. "[Mr. Heimbecker] contacted [Mr. Drudge] at least seven times from December 21, 2005 through January 26, 2006" (Pl.'s memo. of law in support of pl.'s resp. to def.'s mot. for summ. J., Factual Background) (no pagination provided).

Mr. Heimbecker contacted Mr. Drudge at least twice on January 21, 2006 (Pl.'s third am. compl., ex. three). In his first email that day he wrote:

> Matt, as you can see I sent you the complaint on the 17th. The Democrats are not behind this. I never heard of James Plug. [sic] Attached is the letter I faxed to Specter and the Judiciary yesterday (Pl.'s am. compl., May 26, 2009, Ex. Three; Pl.'s third am. compl., ¶¶ 26, 27).

On the evening of January 21, 2006, Mr. Heimbecker contacted Mr. Drudge a second time stating:

> Matt: The White House is spinning you. On December 16, 2005, I sent the attached fax to the White House to give the President a heads-up regarding Judge Alito's failure. My sole purpose was to save the President any embarrassment. Further, I am not a "serial litigant" as the White House spokesman alleged. All filings in the Third Circuit pertain to one lawsuit. Jerry Heimbecker (Pl.'s third am. compl., Ex. Three).

In spite of having read the Drudge Report article, and now claiming that it was defamatory, the correspondence that Mr. Heimbecker sent to Mr. Drudge remained amiable.[10] Mr. Heimbecker's sole basis for disagreement was his being characterized as a "serial litigant" stating that all of his filings in the Third Circuit "pertain[ed] to one lawsuit"[11]

---

10. Mr. Heimbecker asserts that upon learning of the Drudge Report Article he "immediately contacted the defendant and advised him the report was wrong and requested retraction" (Pl.'s Mem. of Law in Support of Pl.'s Motion to Strike Def.'s Objections to Pl.'s Interrogs. and Request for Production of Documents, 13.). This assertion is not supported by the record or any factual assertions in Mr. Heimbecker's pleadings.

11. As discussed below, Mr. Heimbecker's understanding of the term "serial litigant" is inconsistent with the plain meaning of the term.

(Pl.'s third am. compl. Ex. Three). However, as discussed above Mr. Heimbecker admits that he has been a party in various lawsuits for over 40 years (Pl.'s supplemental resp. to def.'s mot. for summ. J., 3).

In one of two emails Mr. Heimbecker sent to Mr. Drudge on January 26, 2006, nearly a week after the Drudge Report article was published, he asked Mr. Drudge to circulate a press release (written by Mr. Heimbecker) that directed the public to the Drudge Report article itself - the very publication which he claims has defamed him (Pl.'s am. compl., ex. three, pl.'s email to defendant, January 26, 2006, 10:35 am; pl.'s third am. compl., ¶ 26, 27). Mr. Heimbecker's press release read:

Press Release

On January 17, 2006 H. Gerard Heimbecker filed a judicial misconduct complaint against Judge Samuel A. Alito Jr. for omitting 03-2180 from his answer to question 23 on his senate judiciary questionnaire.

It was reported by the Drudge Report and the AP on January 20, 2006. On January 21, according to the Washington times, Judge Alito advised chairman specter of the case and blamed clerical error.

Accordingly, on January 25, 2006 Heimbecker filed an amendment to the complaint, requesting an expedited review and removal to another circuit to insure public confidence in the result.

"Copies of the original complaint and the amendment are available online at www.nooneisabovethelaw.com" Heimbecker said (Pl.'s am. compl., ex. three, pl.'s email to defendant, January 26, 2006, 10:35 a.m.) (emphasis

added).

Mr. Heimbecker emailed Mr. Drudge again on the evening of January 26, 2006 (Pl.'s am. compl., Ex. Three). In this email, Mr. Heimbecker emphatically directed Mr. Drudge to post his press release:

> Matt I am hoping you will help me repair my reputation...I sent you the copy of the complaint in good faith...you never contacted me to ask about the Kennedy craziness...you just printed it...I am being maligned all over the internet. Help me just post my press release (Pl.'s Am. Compl., Ex. Three) (emphasis added).

E. *Evidence Absent from the Record*

Evidence or facts that are noticeably absent from the record include the following:

1.  Mr. Heimbecker provides no evidence—in the form of behavior or statements by Mr. Drudge—demonstrating that Mr. Drudge had any ill will or antagonistic feelings toward Mr. Heimbecker. There was no information showing that Mr. Drudge communicated with Mr. Heimbecker or with anyone else in a way showing animus or malice toward Mr. Heimbecker. Nothing in the record or Mr. Heimbecker's pleadings demonstrates that Mr. Drudge intended to harm Mr. Heimbecker in any way. To the contrary, when Mr. Heimbecker asked Mr. Drudge to write a story on his complaint against Justice Alito, Mr. Drudge did.

2.  Mr. Heimbecker does not present a single shred of evidence indicating that Mr. Drudge believed or had reason to believe that the Capitol aide's statement that

Mr. Heimbecker was a "serial litigant" was false or that he behaved recklessly with respect to the veracity of the statements included in the article.

3. There was no evidence that Mr. Drudge believed that publishing the article as written would lead readers to conclude that Mr. Heimbecker was a "political tool" of Senator Kennedy. Nor do Mr. Heimbecker's pleadings indicate that Mr. Drudge behaved recklessly in a way that would lead readers to the conclusions that Mr. Heimbecker alleges.

4. There was no evidence that anything in the article was false, that Mr. Drudge knew it was false, or that Mr. Drudge published the article with reckless disregard for whether or not it was false.

5. Mr. Heimbecker fails to present any evidence that being a "serial litigant" or working with Senator Kennedy's office to disclose information about a United States Supreme Court candidate's background was or could be understood as negative or defamatory; his claims in this regard rest solely on assertions.

6. There was no admissible evidence presented by Mr. Heimbecker showing that his reputation was damaged due a reader seeing him referred to as a "serial litigant."

7. There was no admissible evidence that someone reading the article concluded that Mr. Heimbecker was a "political tool" of Senator Kennedy and based on that specific conclusion thought less of him.

Given the complete absence of this evidence, Mr. Heimbecker fails to present legally sufficient evidence to

support many essential elements of his defamation claim.

## III. PROCEDURAL HISTORY

Appellant, Mr. Gerard Heimbecker, commenced this litigation on January 19, 2007 with the filing of a praecipe to issue writ of summons. On January 25, 2008, after over a year had elapsed and appellant failed to file a complaint, Judge Allan Tereshko of the Philadelphia Court of Common Pleas dismissed appellant's action for failure to prosecute. On March 28, 2008 upon petition by Mr. Heimbecker, Judge Tereshko struck judgment dismissing Mr. Heimbecker's case and Mr. Heimbecker was directed to file a complaint within 30 days.

Mr. Heimbecker filed a third amended complaint in which he pled nine counts against Mr. Drudge. Mr. Heimbecker's claims for false light, breach of contract, intentional infliction of emotional distress, breach of implied contract/unjust enrichment, equity, and civil conspiracy were found legally insufficient and dismissed with prejudice. Mr. Heimbecker's remaining claim against Mr. Drudge was for libel requesting punitive damages.

In his summary judgment motion, Mr. Drudge asserted that Mr. Heimbecker failed to state a claim upon which relief can be granted. Mr. Drudge has asserted that the alleged defamatory statements are substantially true and accurate, are not capable of defamatory meaning, constitute expressions of opinion, are privileged and the claims are barred by prior publication. He also argued that the publication relates to a matter of public concern and that Mr. Heimbecker voluntarily injected himself into a public controversy (the nomination of judge to the United States Supreme Court) (Def.'s answer to pl.'s third am. compl., new matter, p. 17, ¶¶ 2, 7, 8). He further asserted

that the Drudge Report publication at issue did not harm Mr. Heimbecker's reputation, and that Mr. Heimbecker did not suffer actual harm, special injuries or damages (Def.'s answer to pl.'s third am. compl., and new matter, p. 17, ¶¶ 11, 13, 15).

The deadline for discovery was July 6, 2010. On October 13, 2010, this court granted Mr. Drudge's Motion for Summary Judgment against Mr. Heimbecker for legally insufficient evidence. Appellant Mr. Heimbecker timely filed this appeal to the summary judgment decision on November 10, 2010. Appellee Mr. Drudge filed a cross appeal[12] November 23, 2010 challenging Judge Joseph Dych's earlier denial of the preliminary objections to defamation claims.

## IV. LEGAL ANALYSIS

The first amendment guarantees of free speech and press form the necessary backdrop upon which every state law defamation claim must be examined. Federal constitutional protections of speech and press impose limits on state tort law protections to reputation in defamation claims. Courts must carefully scrutinize defamation claims; summary judgment is encouraged where minimum

---

12. This opinion does not address Mr. Drudge's cross appeal of Judge Dych's decision to deny some of his preliminary objections. Specifically, Mr. Drudge's preliminary objections argued that Pl.'s complaint was insufficient as a matter of law because the publication was "truthful and/or privileged", there was no harm, there was no per se slander and the complaint had not been properly served. (Def.'s Prelim, Objections to Pl.'s Compl., pp. 13-22) Unfortunately, Judge Dych is deceased. With the exception of the issue relating to service of the complaint, the Superior Court's decision regarding the summary judgment motion will address similar legal issues as the cross appeal presents but at a different point in the chronology of the case. Consequently, whatever the Superior Court's decision is on the summary judgment motion, it may moot out the issues raised by Mr. Drudge in his cross appeal.

legal requirements have not been met to ensure freedom of speech and press particularly in cases involving public issues or figures. *First Lehigh Bank v. Cowen*, 700 A.2d 498, 502 (Pa. Super. 1997) (emphasizing the "important function" of summary judgment in the context of First Amendment limits on defamation claims: "For the stake here, if harassment succeeds, is free debate.") (internal citations omitted).

If members of the press are incessantly exposed to the drain of lengthy frivolous litigation then they may chose silence on important public matters that require discussion and debate. Democracy necessitates that people are informed in the present about public issues; it cannot await months or years for absolute scientific proof of every comment or viewpoint or the time will pass when necessary action is required. Free press does not mean unrestrained press. The press has legal responsibilities. The press cannot be reckless or malicious in its reporting on public figures: truth should remain the goal. But if the press is constrained to the point of timidity out of fear of constant litigation and courts fail to step in when the claims obviously lack a basis, then society and democracy suffer greatly.

This case lacked a sufficient evidentiary basis to move forward to trial, mandating summary judgment. Under Pennsylvania Rule of Civil Procedure 1035.2(2), after the close of pleadings, summary judgment is proper when:

> after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would

require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2(2); *Ertel v. Patriot-News Co.*, 544 Pa. 93, 100, 674 A.2d 1038, 1041 (Pa. 1996) (reversing Superior Court holding that plaintiff established a prima facie defamation claim and affirming trial court grant of summary judgment where plaintiff presented no evidence that statement published was false).

This court views the record in the light most favorable to Mr. Heimbecker as the non-moving party. *Ertel v. Patriot-News Co.*, 544 Pa. 93, 98-99, 674 A.2d 1038, 1041 (Pa. 1996) (citing *Penn State University v. County of Centre*, 532 Pa. 142,144-145, 615 A.2d 303, 304 (1992)). See also *Weaver v. Lancaster Newspapers*, 592 Pa. 458, 926 A.2d 899 (2007).[13] To survive Mr. Drudge's motion for summary judgment, Mr. Heimbecker would have to produce "sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel v. Patriot-News Co.*, 544 Pa. 93, 98-99, 674 A.2d 1038, 1041 (Pa. 1996).

Pennsylvania tort law defines libel as "a maliciously written or printed publication which tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule or injure him in his business or profession." *Brophy v. Phila. Newspapers*, 422 A.2d 625, 628 (Pa. Super. 1980). An action in defamation "is based on a violation of the fundamental right of an individual to enjoy a reputation unimpaired by false and defamatory attacks" (citing *Berg v. Consolidated Freightways, Inc.*,

---

13. The Pennsylvania Supreme Court has held that federal case law interpreting Fed.R.Civ.P. 56 is instructive because the rule closely tracks Pa.R.C.P 1035. *Ertel v. Patriot News*, 544 Pa. 93, 100, 674 A.2d 1038, 1042 (1996).

421 A.2d 831, 833 (Pa. Super. 1980)). In Pennsylvania, a person bringing a defamation bears the burden of proving:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion. *Weaver v. Lancaster Newspapers, Inc.,* 592 Pa. 458, 465-466, 926 A.2d 899, 903 (Pa. 2007) (citing 42 Pa.C.S.A. § 8343(a)).[14]

"The defendant can defend against an action in defamation by proving that the defamatory communication was true, the occasion on which it was published was of privileged character, or that the character of the subject matter of defamatory comment was a public concern." *Spain v. Vincent,* 461 A.2d 833, 836 (Pa. Super. 1985).

However, the first amendment requires that additional evidence be shown to a higher level of proof when the allegedly defamatory statements are about a public figure. Specifically, since Mr. Heimbecker is a public figure

---

14. The parties do not dispute that the statement at issue was pu - lished by Mr. Drudge and or that it applied to the Mr. Heimbecker.

he must show clear and convincing evidence that the statements are false and that they were made with "actual malice" in order to prevail. *Times v. Sullivan*, 376 U.S. 254, 279-81 (1964).

In this case, Mr. Heimbecker asserted that the quoted statement referring to Mr. Heimbecker as a "serial litigant" is wholly false (Pl.'s third am. compl., p.9, ¶28). He also claimed that the article was defamatory because it conveyed "by implication...that Mr. Heimbecker was a political tool of Senator Kennedy and his staff" (Pl.'s Third Am. Compl., ¶28; Denied in def.'s answer to Pl.'s Third Am. Compl., ¶ 28).

Mr. Drudge asserted that summary judgment against Mr. Heimbecker was proper under Pa.R.C.P. 1035.2. His answer and new matter to Mr. Heimbecker's third amended complaint asserts that Mr. Heimbecker voluntarily injected himself into a public controversy (the nomination of a judge to the United States Supreme Court), that the alleged defamatory statement is not capable of defamatory meaning, and that the publication relates to a matter of public concern (Def.'s answer to Pl.'s Third am. compl. and new matter, p.16, ¶¶ 2, 7, 8). Mr. Drudge further asserted that the Drudge Report publication at issue did not harm Mr. Heimbecker's reputation, and that Mr. Heimbecker did not suffer actual harm, special injuries or damages as a result of the publication of the Drudge Report Article (Def.'s answer to pl.'s third am. compl., and new matter, p. 17, ¶¶ 11, 13, 15.).

It is this court's duty to determine whether Mr. Heimbecker "has failed to produce evidence of facts essential to the cause of action." *Ertel v. Patriot-News Co.*, 544 Pa. 93, 101 fn. 2, 674 A.2d 1038, 1042 (Pa. 1996);

*Hepps v. Philadelphia Newspapers*, 506 Pa. 304, 485 A.2d 374 (Pa. 1984) (while existence or absence of actual malice is question of fact for jury in libel action, whether there is sufficient evidence to warrant such finding by jury is question of law for court). Mr. Heimbecker has failed to present any evidence - much less clear and convincing evidence - that the published statements in the Drudge Report were false or that Mr. Drudge published them with "actual malice." Furthermore, the complained of statements are not susceptible to a defamatory meaning and Mr. Heimbecker failed to produce any evidence that the statements caused Mr. Heimbecker any harm for which he is entitled to damages.

A. *A Motion For Summary Judgment on a Defamation Claim Must be Evaluated with the Higher Burdens that Federal First Amendment Jurisprudence Impose.*

The principles underlying contemporary defamation law and their interplay with the First Amendment were first enunciated in 1735 by Philadelphia's own Andrew Hamilton[15] in the landmark case of *NY v. John Peter Zenger*.

In spite of his advanced age and ill health, Mr. Hamilton travelled from Philadelphia to New York to defend Mr. Zenger who had been jailed and charged with libel claims

---

15. Mr. Hamilton left a number of indelible marks on the City of Philadelphia. As one of the earliest members of the Philadelphia Bar, Hamilton's extraordinary legal abilities led to "Philadelphia lawyer" becoming a "byword for a lawyer of exceptional prominence and ability." Robert R. Bell, Philadelphia Lawyer A History 1735-1945, 36 (1992). As an architect, Mr. Hamilton was responsible for designing Pennsylvania's historic Independence Hall. See Superior Court of Pennsylvania, "Philadelphia courtroom", available at http://www.superior.court.state.pa.us/about.htm (click "courtrooms," click "Founders courtroom - Philadelphia") (last accessed Jan. 26, 2011).

by New York's colonial Governor William Cosby.[16] Mr. Zenger owned New York's first non-government print shop that published *The Weekly Journal* which included essays, letters, and political cartoons espousing the importance of freedom of the press and criticizing the New York colonial government, and occasionally Governor Cosby. *Id.* at 8-9, 41-138. The publication resonated with Cosby's critics who viewed him as a "rogue" governor who exchanged government offices for money among other wrongs. *Id.* at 2. In response to the publications, Governor Cosby ordered the *Weekly Journal* publications burned and imprisoned Mr. Zenger on charges of libel. *Id.* at 18.

Libel law at that time forbade direct criticism of the executive, even if the criticisms were true. In a libel trial, the jury's sole function was to determine whether the statements were published. Philadelphia Lawyer at 31. Andrew Hamilton challenged the law during Mr. Zenger's trial declaring that the Governor should have to prove that the published statements were false before someone could be held responsible for a libel since the "falsehood makes the scandal." *Id.* at 32. The judge disagreed and instructed the jury that if the statements were published, a libel was made out. Notwithstanding the judge's instructions, Mr. Hamilton appealed directly to the common sense of the jury[17] that complaints about government should not be

---

16. Robert R. Bell, Philadelphia Lawyer A History. 1735-1945, 27, 31 (1992) (hereinafter Philadelphia Lawyer); Burton Alva Konkle, The Life of Andrew Hamilton 1676-1741: The Day-Star of the American Revolution, 2, 70 (1941); James Alexander, A Brief Narrative of the Case and Trial of John Peter Zenger; Printer of the Weekly Journal, (Stanley Katz ed., The Belknap Press of Harvard University Press 1963) 70 (hereinafter Trial of Zenger).

17. The trial of John Peter Zenger and Mr. Hamilton's successful acquittal proved to be one of the earliest examples of jury nullification in American History. See J. Wilson Parker, Free Expression and the Function of the Jury, 65 B.U.L. Rev. 483, 499 fn. 70 (1985).

actionable unless the Governor proved that they were false:

> I beg leave to insist that the right of complaining or remonstrating is natural; and the restraint upon this natural right is the law only, and those restraints can only extend to what is *false*: For as it is truth alone which can excuse or justify any man for complaining of a bad administration...*Truth* ought to govern the whole affair of libels. Trial of Zenger at 84 (emphasis in original).

Mr. Hamilton cautioned that the jury should be especially concerned about libel prosecutions where the defendant in a libel action criticized men in power. Those in positions of power, he asserted, could not only provoke complaint, but punish complaints under libel law:

> [O]ld and weak as I am, I should think it my duty, if required, to go to the utmost part of the land where my service could be of any use in assisting to quench the flame of prosecutions upon informations set on foot by the government to deprive a people of the right of remonstrating (and complaining too) of the arbitrary attempts of men in power. Men who injure and oppress the people under their administration provoke them to cry out and complain; and then make that very complaint the foundation for new oppressions and prosecutions... the question before the court and you gentlemen of the jury is not of small nor private concern, it is not the cause of a poor printer.... It is the cause of liberty; and I make no doubt but your upright conduct this day will not only entitle you to the love and esteem of your fellow citizens; but every man who prefers freedom to a life of slavery will bless and honor you as men who

have baffled the attempt of tyranny.... *Id.* at 99.

Governor Cosby, Mr. Hamilton argued to the jury, should have to prove that the statements (that Zenger admittedly published) were false in order to secure a victory. *Id.* at 20, 75. The jury returned a "not guilty" verdict[18] shortly after the conclusion of trial apparently persuaded, by Mr. Hamilton's view of what libel law ought to require. Philadelphia Lawyer at 34; Trial of Zenger at 12, 75-76, 96-97. Mr. Hamilton's argument in the Zenger's trial in 1735 has been referred to as "the game of American Freedom, the morning star of that liberty which subsequently revolutionized America." Philadelphia Lawyer at 35.

Mr. Hamilton's argument to the jury balancing both protection of individual reputation and the importance of free speech and press, awaited over two centuries before it was adopted by the United States Supreme Court. In *NY Times v. Sullivan*, the United States Supreme Court held that the First Amendment requires a higher standard of proof when it comes to defamation claims brought by public officials to avoid a chilling effect on important public speech. *Times v. Sullivan*, 376 U.S. 254, 279-81 (1964). In *Sullivan*, the Supreme Court held that a public official who brings a defamation action must prove by clear and convincing evidence that the statement is false and that the defendant made the statement with "actual malice." *Id.* See also *Phila. Newspapers v. Hepps*, 475 U.S. 767, 775 (1985) ("[A]s one might expect given the language of the court in New York Times, a public-figure plaintiff must show the falsity of the statements at issue in

18. Since the jury acquitted there was no appeal and the opport-nity was lost for a written precedent addressing Mr. Hamilton's vision of what libel law should entail.

order to prevail in a suit for defamation) (internal citations omitted). "Actual malice" is shown if the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Times v. Sullivan*, 376 U.S. 254, 279-80(1964).

In first articulating the actual malice standard in *Sullivan*, the Supreme Court outlined the significance of free speech and press to the fabric of our nation and culture:

> It is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for vigorous advocacy no less than abstract discussion. The First Amendment, said Judge Learned Hand, "presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection." To many this is, and always will be, folly; but we have staked upon it our all. 376 U.S. 254, 269-270 (1964) (internal quotes and citations omitted).

The actual malice standard reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks...." *Id.* at 270.

The Supreme Court has explained that the First Amendment of the Federal Constitution strictly protects free speech and free press from being stifled even at the risk that some publications may be inaccurate:

> [T]he stake of the people in public business and the conduct of public officials is so great that neither the

defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies...[T]o insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as the true ones. *St. Amant v. Thompson,* 390 U.S. 727,731-732 (U.S. 1968).

The Supreme Court warned that "erroneous statement is inevitable in free debate," and "it must be protected if the freedoms of expression are to have the breathing space that they need to survive." *Times v. Sullivan,* 376 U.S. 254, 271-272 (1964) (Brennan, J.) (internal citations and quotations omitted).

The Supreme Court later extended the actual malice standard to "public figure" plaintiffs who are not government officials. See *Gertz,* 336-37 (quoting *Butts* at 164); *Tucker v. Phila. Daily News,* 577 Pa. 598, 625, 848 A.2d 113,130 (Pa. 2004). In *Gertz v. Welch* the Supreme Court explained why public figures should be held to the same standard as public officials.

More important than the likelihood that private individuals will lack effective opportunities for rebuttal, there is a compelling normative consideration underlying the distinction between public and private defamation plaintiffs. An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case.

Those classed as public figures stand in a similar

position. Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own.... More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment. *Gertz v. Welch*, 418 U.S. 323, 344-45 (1974).

Thus, a private citizen who involves himself in public controversies assumes the risk of that involvement and he must prove actual malice and falsity by clear and convincing evidence. *Curtis Publishing v. Butts*, 388 U.S. 130 (1967).

B. *Mr. Heimbecker is a Limited Purpose Public Figure Who Must Prove Actual Malice and Falsity by Clear and Convincing Evidence to Prevail in a Libel Action.*

A private citizen may become a "limited purpose" public figure if he "voluntarily injects himself or is drawn into a particular public controversy"[19] and who thereby becomes "a public figure for a limited range of issues." *Am. Future Sys. v. Better Bus.*, 592 Pa. 66, 86-87, 923 A.2d 389, 402 (Pa. 2007) (citing *Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974). "[W]hether appellant was a "public" or "private" figure at the time the allegedly defamatory article was published, is a question of law for the court to determine in the first instance." *Tucker v. Phila. Daily News*, 577, Pa. 598, 625, 848 A.2d 113,130 (Pa. 2004) (finding that plaintiffs were public figures); *Rutt v. Bethlehem*, 335 Pa. Super. 163,177 (1984); *Braun*

---

19. A public controversy is "a specific public dispute that has for - seeable and substantial ramifications for persons beyond its immediate participants." *Iafrate*, 621 A.2d 1005, 1007 (Pa.Super. 1993).

*v. Phila,* Stet (1995); *Mendelson v. Manning,* 2007 Pa. Dist. & Cnty. LEXIS 256 (2007). To determine whether a plaintiff is a public figure, it is necessary to consider the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Am. Future Sys., v. Better Bus.,* 592 Pa. 66,86-87, 923 A.2d 389, 402 (Pa. 2007) (citing *Gertz v. Robert Welch,* 418 U.S. 323, 352 (1974)); (holding that plaintiff corporation became a limited purpose public figure due to extensive advertising campaigns).

*1. Mr. Heimbecker injected himself into the public eye by seeking press coverage and using his litigation, recusal motions and judicial misconduct complaint to create a controversy over Justice Alito's confirmation for the Supreme Court.*

The Pennsylvania Supreme Court reiterated the reasoning of *Gertz* with respect to public figures being "less deserving of (judicial) protection...because they have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.' In other words, public figures effectively have assumed the risk of potentially unfair criticism by entering into the public arena and engaging the public's attention." *Am. Future Sys. v. Better Bus,* 592 Pa. 66, 88 (Pa. 2007) (citing *Steaks Unlimited,* 623 F.2d at 273 (ellipsis in original)). Mr. Heimbecker became a limited purpose public figure because he "actively participate[d] in the public issue in a manner intended to obtain attention" and his "action may itself invite comment and attention, and...he is deemed to have assumed the risk of such attention." *Marcone v. Penthouse Int'l. Magazine,* 754 F.2d 1072, 1083 (3d. Cir. 1985) (reversing district court and finding that attorney plaintiff was a limited purpose public figure due to

media attention after his indictment, non-representational association with drug dealers).

Mr. Heimbecker admits, throughout his pleadings, that he sought to call attention to Justice Alito's alleged failure to disclose that Mr. Heimbecker once requested Justice Alito's recusal by contacting government officials, the press, and the general public via his website. Mr. Heimbecker states that in contacting Mr. Drudge,

> Plaintiff expected the defendant would investigate the information that plaintiff provided to him and help the plaintiff in disclosing important information to the public in a professional and journalistic manner... (Pl.'s third am. compl., ¶ 22-23) (emphasis added and internal quotations omitted).

Mr. Heimbecker emailed Mr. Drudge no less than seven times over the span of several weeks regarding Justice Alito not listing the general motion to recuse the entire Third Circuit in his judicial questionnaire (Pl.'s Am. Compl., Ex. Three; Pl.'s Third Am. Compl. Ex. Three). Mr. Heimbecker contacted countless other parties in addition to Mr. Drudge including President Bush, the Senate Judiciary Committee, and Justice Alito (Pl.'s Memo. of Law in Support of Pl.'s Resp. to Def.'s Mot. for Summ. J.; Pl.'s Am. Compl., Ex. Three; Pl.'s Third Am. Compl. Ex. Three). Mr. Heimbecker even sought to use the Drudge Report as the vehicle to publicize his concerns about Justice Alito (Pl.'s Third Am. Compl., Ex. Three; Pl.'s Am. Compl., Ex. Four.).

On January 20, 2006 and in response to Mr. Heimbecker's calling attention to the issue, the Drudge Report published the article "Drudge Exclusive: Teddy's

Last Gasp On Alito," on the very topic for which Mr. Heimbecker sought publicity. Notwithstanding Mr. Heimbecker's persistent efforts to get this topic in the public eye, he sued Mr. Drudge for defamation.

Even after the Drudge Report's allegedly offending article, Mr. Heimbecker continued to contact Mr. Drudge by email seeking his assistance in publicizing more on the topic. Remarkably, Mr. Heimbecker drafted a press release calling public attention to the very article that he claims was defamatory by stating that his judicial misconduct complaint was "reported on by The Drudge Report and the AP on January 20, 2006" (Pl.'s Third Am. Compl., Ex. Three, Email dated January 26, 2006, 11:35 AM). He emailed the press release to Mr. Drudge asking that it be posted on the Drudge Report along with a website that Mr. Heimbecker created concerning the matter (Pl.'s Third Am. Compl., Ex. Three).[20]

Mr. Heimbecker's steadfast efforts to seek publicity is analogous to cases where the federal courts have held that an attorney plaintiff is a limited purpose public figure. In *Marcone*, the court reasoned that where an attorney engages in activities that are not purely related to litigation "such as holding news conferences or otherwise affirmatively making a public issue of the case - then those activities may be counted in the public figure calculus." *Marcone*, 754 F.2d 1072, 1086 (3d. Cir. 1985). Mr. Heimbecker did just that. His efforts to self-publicize stand in stark contrast to the actions of the plaintiff attorney in *Gertz* who "never discussed either the criminal or civil litigation with the press and was never quoted as having done so...did not

---

20. Within the press release Mr. Heimbecker also pointed readers to sources other than the Drudge Report that had also reported on the matter. *Id.*

thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome." *Gertz v. Robert Welch,* 418 U.S. 323, 352 (U.S. 1974). Here, it undisputed that Mr. Heimbecker intentionally and repeatedly sought press coverage of his judicial complaint against Justice Alito in an effort to engage the public's attention on the matter.

The Pennsylvania Supreme Court has also held that when there is overlap between the subject matter of the alleged libelous publication, and the matter for which a defamation plaintiff inserted himself into the public realm, this factor militates in favor of finding that the plaintiff is a limited purpose public figure. *Am. Future Syst. v. Better Bus. Bureau,* 592 Pa. 66, 89-90 (Pa. 2007) (citing *Blue Ridge Bank v. Veribanc, Inc.,* 866 F.2d 681, 687 (4th Cir. 1989)). Here the subject matter of the allegedly defamatory publication is the same matter for which Mr. Heimbecker sought the public's attention - Justice Alito's alleged recusal omission and Mr. Heimbecker's complaint of judicial misconduct.

The Pennsylvania Supreme Court has made clear that in determining a person's status as a private or public figure, his "ability to rebut the defamatory statements due to greater access to the channels of communication than private individuals..." is significant. *Am. Future Sys. v. Better Bus,* 592 Pa. 66, 86 (Pa. 2007); *See also Marcone,* 754 F.2d at 1081 (private individuals have less access to media as a method of self help where defamation might occur). Mr. Heimbecker's pleadings reveal that he employed multiple forms of media in attempting to bring attention to Justice Alito's omission; creating his own website, sending faxes and letters to the Drudge Report, and authoring a press release to advance his message (Pl.'s

Third Am. Compl., Ex. Three; Pl.'s Am. Compl., May 26, 2009, Ex. Three.).

Mr. Heimbecker is precisely the kind of person that the Supreme Court intended to hold to a higher standard when it extended the "actual malice" standard to public figures who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved....they invite attention and comment." *Gertz v. Welch*, 418 U.S. 323, 344-45 (1974) (emphasis added). Mr. Heimbecker took it upon himself to notify the White House, the Senate Judiciary Committee, the Drudge Report and posted his own website to publicize Justice Alito's alleged omission and Mr. Heimbecker's complaint of judicial misconduct. He intentionally brought attention to himself as the filer of the recusal motion and the misconduct complaint thereby inviting comment about his credibility.

C. *Mr. Drudge's Statements are Entitled to Greater Protection Because They Relate to a Matter of Public Concern - the Confirmation of a Justice to the United States Supreme Court.*

The United States Supreme Court has held that "[i]t is speech on matters of public concern that is at the heart of the First Amendment's protection.... and is entitled to special protection." *First National v. Bellotti*, 435 U.S. 765, 776 (1978).

"[Whether]...speech addresses a matter of public concern must be determined by [the expression's] content, form, and context...as revealed by the whole record." *Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 762 (1985).

The content, form, and context of the Drudge Report article at issue in this case dictate that it be classified as matter of public concern. The article, as a whole, relates to the confirmation of a Justice to the United States Supreme Court - an institution that occupies the apex of the American judicial system. Among other things, the article's content reports on Mr. Heimbecker's judicial misconduct complaint against Justice Alito and Senator Kennedy's staffer's alleged critique of Justice Alito as a United States Supreme Court nominee. It was published while the United States Senate's consideration of Justice Alito was underway.[21] Mr. Heimbecker himself admits that he sought to publicize what he believed was "important information to the public..." (pl.'s Third Am. compl., ¶ 22). The matter of Justice Alito's nomination to the U.S. Supreme Court and his Senate confirmation for a lifetime tenure on the highest court in the nation was certainly a matter of utmost public concern.

D. *Mr. Heimbecker Failed to Produce Clear and Convincing Evidence that the Statements at Issue are False.*

To sustain a defamation claim, Mr. Heimbecker has the burden of proving clear and convincing evidence that the offending statement was false. *Hepps v. Phila. Newspapers,* 506 Pa. 304, 485 A.2d 374 (Pa. 1984). See also, *Tucker v. Phila. Daily News,* 577 Pa. 598, 621, 848 A.2d 113, 127 (2004); *Ertel v. Patriot-News Co.,* 544 Pa. 93, 99, 674 A.2d 1038, 1041 (Pa. 1996) (same); *Milkovich v. Lorain Journal,* 497 U.S. 1,20,n.6 (1990); *Phila. Newspapers*

---

21. Justice Alito was confirmed on January 31, 2006. See Biograp - ical Directory of Federal Judges, Federal Judicial Center, available at http://www.fjc.gov/servlet/nGetInfo?jid=26&cid=999&ctype=na&insta te=na. Last accessed January 27, 2011.

*v. Hepps*, 475 U.S. 767, 779, n.4 (1986). Whether Mr. Heimbecker has presented sufficient evidence of falsity is a question of law for the court. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 102, 674 A.2d 1038, 1042 (Pa. 1996) (defendant newspaper was entitled to summary judgment where public figure plaintiff produced no evidence that the article at issue was false. Therefore there was no genuine issue of material fact as to an essential element of plaintiff's claim.).

Even if Mr. Heimbecker were a private plaintiff, he must prove the falsity of the statements at issue because they relate to a matter of public concern (Justice Alito's nomination) and Mr. Drudge is a media defendant. See *Milkovich v. Lorain Journal,* 487 U.S. 1,19-20 (1990). Mr. Heimbecker's claim fails even if he were a private plaintiff because he produces no evidence of falsity.

Mr. Heimbecker asserts that the Drudge Report defamed him by quoting a Capitol aide who referred to him as a "serial litigant" and the article allegedly implied that he was a "political tool" of Senator Kennedy[22] (Pl.'s Third Am. Compl., ¶¶ 21, 28-29). Mr. Heimbecker fails to show any evidence that the characterization of him as a "serial litigant" is false. The article never mentions Mr. Heimbecker as being a "political tool" of Senator Kennedy nor even having any relationship with him of any kind.

### 1. *"Serial Litigant" statement.*

---

22. Mr Heimbecker's complaint states that "the statements by all of the defendants regarding Senator Kennedy, his staff and any and all statements referring to Mr. Heimbecker as a 'serial litigant' are wholly false" (Pl.'s Third Am. Compl., ¶ 29). Mr. Heimbecker clearly would have no standing to sue over any alleged inaccurate statements regarding Senator Kennedy or his staff nor does he provide any evidence that they were. Consequently, this court focuses on those statements relevant to Mr. Heimbecker.

Mr. Heimbecker's defamation claim focuses primarily on the Drudge Report's quote by a Capitol aide stating that "The individual who filed this complaint is clearly a 'serial litigant.' It will be interesting to see how far the Democrats will push this and what the mainstream media will make of it" (Pl.'s Third Am. Compl., ¶21). Notably, the statement of which Mr. Heimbecker complains was not made by Mr. Drudge but rather quotes a third party "Capitol Aide." Mr. Heimbecker does not plead nor does he provide any facts that demonstrate the falsity of his being a "serial litigant." Rather, he concedes that he has been involved as a party for 40 years in various lawsuits and provides a lengthy description of the cases he has litigated (Pl.'s supplemental resp. to def.'s mot. for summ. J., p.3). His major complaint seems not to be the truth of the statement that he is a "serial litigant" but rather that it could be interpreted negatively (pl.'s Third Am. compl., ¶¶ 34-35, 40-76).

In determining whether the "serial litigant" statement is false, the court considers its plain meaning. "Serial" is defined as "performing a series of similar acts over a period of time."[23] "Litigant" is defined as "one engaged in a lawsuit."[24] Joining these definitions, a serial litigant is a person who is engaged in lawsuits (the "series of similar acts") over a period of time. Mr. Heimbecker pleads no facts from which a jury could reasonably conclude that the statement is false by clear and convincing evidence.

For Mr. Heimbecker to claim that the statement that he

---

23. See Merriam Webster Dictionary and Thesaurus Online, "serial" definition 5a, available at http://www.merriam-webster.com/dictionary/serial (last accessed January 27, 2011).

24. See Merriam Webster Dictionary and Thesaurus Online, "lit - gant" definition, http://www.merriam-webster.com/dictionary/litigant (last accessed January 27, 2011).

is a "serial litigant" is defamatory within pleadings that describe the series of lawsuits he has initiated over the course of four decades defies reason. Mr. Heimbecker describes these matters in some detail over 40 paragraphs, and eight pages of his complaint (Pl.'s Third Am. Compl. ¶¶ 37-76). It is undisputed that, in some capacity, Mr. Heimbecker was involved in litigation in various jurisdictions including but not limited to the following; the Court of Common Pleas of Delaware, Philadelphia and Montgomery County, the Superior Court of Pennsylvania, and the Third Circuit federal district and appellate courts (Def.'s mot. for summ. J., ¶34-35, 41-44, 47-49,72-76). In addition to utilizing these judicial forums, Mr. Heimbecker admits that he has initiated administrative complaints with the Pennsylvania Bureau of Professional and Occupational Affairs and the Pennsylvania Insurance Fraud Unit (Pl.'s Third Am. Compl. ¶¶40, 71). His claim that he is not a serial litigant flies in the face of these extensive admissions.

Mr. Heimbecker never contests that he has serially litigated for decades; he concedes it at length. He does not produce a shred of evidence by which a reasonable jury could conclude that the statement referring to him as being a "serial litigant" is false.

Mr. Heimbecker's claim also fails because a defendant may defeat a plaintiff's defamation claim by showing that a statement is "substantially true." *Dunlap v. Phila. Newspapers*, 448 A.2d 6 (Pa. Super. 1985). Mr. Heimbecker's admissions and his extensive litigation history show that the statement that he is a "serial litigant" is substantially true.

2. *Alleged "political tool" statements.*

Mr. Heimbecker asserts that the statements in the article

"were intended to and did convey to the readers thereof, by implication, that Mr. Heimbecker was a political tool of Senator Kennedy and his staff" (Pl.'s Third Am. compl., ¶28). The article never uses the term "political tool" nor does it even mention that Mr. Heimbecker has any connection with Senator Kennedy or his staff. There is neither the statement nor suggestion that Mr. Heimbecker is a "political tool" of Senator Kennedy.

Mr. Heimbecker never identifies which statements in the article imply that he is a "political tool" of Senator Kennedy nor does he describe any statements that are false. This court examines all paragraphs that mention Senator Kennedy and his staff.

The Drudge Report has learned Sen. Ted Kennedy's (D-MA) office is behind a last ditch effort to stop Judge Samuel a Alito's confirmation before next week's vote using a 2004 recusal request.

The Drudge Report has obtained a complaint filed by H. Gerard Mr. Heimbecker of Upper Darby, PA accusing Alito of not properly listing the Mr. *Heimbecker v. 555 Associates* case in his Senate questionnaire.

Kennedy legal aide James Flug is behind the efforts to push this latest attack. The veteran aide has been criticized for Sen. Kennedy's misfires during the Alito hearing last week. Flug was reportedly behind the attacks Kennedy used against Alito related to the Concerned Alumni of Princeton (CAP) and Vanguard recusal case (Pl.'s Third Am. compl., Ex. Four).

Mr. Heimbecker does not allege that Kennedy was not involved in an effort to stop Alito's confirmation or that legal aide James Flug was behind those, or previous,

efforts. Since Mr. Heimbecker failed to show evidence by which a jury could find in his favor on an essential element—that any statements about Senator Kennedy are false—summary judgment is appropriate.

In addition, Mr. Heimbecker's own admissions demonstrate that the statements involving Senator Kennedy and his staff are substantially true thereby defeating a claim for defamation. Far from alleging any facts indicating that any portion of these paragraphs is false, Mr. Heimbecker admits the truth of at least some of the statements "regarding Senator Kennedy" in the Drudge Report article. With respect to Alito's failure "to list all recusal matters on his questionnaire to the Senate Judiciary Committee," Mr. Heimbecker agrees that Senator Kennedy "had criticized and questioned the nominee for similar conduct" (Pl.'s mem. of law in support of pl.'s mot. to strike def.'s objections to pl.'s interrogs, and requests for production of documents, factual and procedural background).

E. *Mr. Heimbecker Fails to Allege or Demonstrate Sufficient Evidence of Actual Malice.*

The question of whether a plaintiff has produced clear and convincing evidence of actual malice is initially a question of law:

> The question of whether the evidence in the record in a defamation case is of convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact. Judges, as expositors of the constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry

of any judgment that is not supported by clear and convincing proof of "actual malice" *Curran*, 546 A.2d at 644 (citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 80 L. Ed. 2d 502, 104 S.Ct. 1949 (1984)); *Hepps v. Phila. Newspapers*, 506 Pa. 304 (1984) (while existence or absence of actual malice is question of fact for jury in libel action, whether there is sufficient evidence in a case to warrant such finding by jury is question of law for court).

Demonstrating actual malice is a difficult burden because it "implies at a minimum that the speaker entertained serious doubts about the truth of his publication,...or acted with a high degree of awareness of...probable falsity." *Am. Future Sys., v. Better Bus. Bureau,* 592 Pa. 66, 76, 923 A.2d 389, 395 (Pa. 2007) (quotations omitted); See also *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964); *Brophy v. Phila. Newspapers,* 422 A.2d 625, 629-34 (Pa. Super. 1980). The United States Supreme Court has emphasized that the actual malice requirement is a subjective standard, not an objective standard. *Harte-Hanks v. Connaughton,* 491 U.S. 657, 688 (1989). The focus in determining actual malice is not whether the statement was false but whether Mr. Drudge knew that the statement was false or probably false when he published it. In "determining whether the constitutional standard has been satisfied...the court must consider the factual record in full." *Id.*

This court granted defendants' summary judgment motion because Mr. Heimbecker failed to produce any evidence, much less clear and convincing evidence, that Mr. Drudge published another person's comment that Mr. Heimbecker was "clearly a serial litigant" with actual malice - "with knowledge that it was false or with reckless disregard of whether it was false or not." *Times v. Sullivan,*

376 U.S. 254, 279-80 (1964).

1. *Mr. Heimbecker did not produce any evidence that Mr. Drudge acted with actual malice.*

Here, the undisputed facts are that the article reported information that Mr. Heimbecker provided to Mr. Drudge but the record contains no evidence that Mr. Drudge acted with actual malice - "with knowledge that it was false or with reckless disregard of whether it was false or not." *Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). Mr. Heimbecker admits "[Drudge] did not contact the plaintiff' about the matter (Pl.'s Third Am. compl., ¶¶ 14-15, Ex. 3) (emphasis omitted). Mr. Heimbecker concedes that he informed Mr. Drudge by email of the recusal request, Justice Alito's judicial questionnaire and the judicial misconduct complaint and asked for help in publicizing it, and provided him with a copy of the complaint (Pl.'s Am. compl., May 26, 2009, Ex. Three; Pl.'s Third Am. compl., ¶ 19). Mr. Drudge subsequently published an article on the topic on January 20, 2006 (Def.'s mot. for summ. J., ¶ 3-7; pl.'s resp. to def.'s mot. for summ. J., ¶ 3-7). Even after Mr. Drudge published the allegedly defamatory statements Mr. Heimbecker continued to reach out to Mr. Drudge and attempted to use the Drudge Report as a vehicle for additional publicity about the fact of his having filed his judicial misconduct complaint (Pl.'s Am. compl.; Pl.'s third am. compl., ¶ 26, 27, Ex. Three).

The record contains no evidence of a single communication, much less a malicious one, by Mr. Drudge to Mr. Heimbecker. There was no evidence of any malicious comments made by Mr. Drudge about Mr. Heimbecker. There was no evidence that Mr. Drudge believed the person's statement that Mr. Heimbecker was

a "serial litigant" was false. There were not even any averments in Mr. Heimbecker's complaint alleging actual malice. Evidence of actual malice is simply absent from the record.

Mr. Heimbecker's pleadings thus contain even less than those previously found inadequate to support allegations of malice. In *Tucker v. Philadelphia Daily News,* the public figure plaintiffs vaguely alleged that their attorneys told the defendant newspapers that the published statements were false. 848 A.2d 113 (Pa. 2004). The court dismissed the plaintiffs' claims with leave to amend if the plaintiffs could assert, in good faith, that counsel informed the defendant's of the falsity of the statements. *Tucker* at 132, 135-36.

The facts, read in the light most favorable to Mr. Heimbecker, reveal that Mr. Heimbecker actively pursued Mr. Drudge in order to encourage publication of an article, that Mr. Drudge obliged by publishing an article, that Mr. Heimbecker called public attention to the published article and continued to email Mr. Drudge with updates on the issue. Indeed, Mr. Heimbecker contacted Mr. Drudge no less than four times after the article was published and his correspondence with Mr. Drudge remained cordial (Pl.'s Am. Compl., May 26, 2009, Ex. Three; Pl.'s Third Am. Compl., ¶26,27).

There is no evidence whatsoever, much less clear and convincing evidence, that Mr. Drudge included anything in the article "with knowledge that it was false or with reckless disregard of whether it was false or not." *Times v. Sullivan,* 376 U.S. 254, 279-80 (1964). There was not even a hint that Mr. Drudge held ill will toward Mr. Heimbecker nor had any inkling that the article was anything but

completely accurate.

## 2. *Mr. Heimbecker cannot prove malice merely by showing that Mr. Drudge failed to investigate the truth of the "serial litigant" statement.*

Lacking any evidence of actual malice, the thrust of appellant's argument is that Mr. Drudge was negligent by failing to adequately investigate the truth of the "serial litigant" statement[25] (Pl.'s Third Am. compl., ¶ 36). Even if Mr. Heimbecker were able to show that the statements were false and that Mr. Drudge failed to carefully investigate their truthfulness, these are still insufficient grounds upon which Mr. Heimbecker can bring a defamation claim.

The United States Supreme Court and Pennsylvania courts have consistently held that mere negligence or recklessness by a reporter in investigating a story does not amount to actual malice:

> Mere negligence or carelessness is not evidence of actual malice. A defendant's failure to verify his facts may constitute negligence, but does not rise to the level of actual malice. That is, while it arguably may be negligent not to check independently the veracity of information before publication, this fault does not rise to the level of actual malice. *Reiter v. Manna*, 647 A.2d 562, 565 (Pa. Super. 1994) (internal citations and quotations omitted) (quoting *Oweida v. Tribune-Review*, 599 A.2d 230, 243 (Pa. Super. 1991).

The U.S. Supreme Court has expressly rejected an actual malice standard predicated upon "a showing of highly

---

25. Mr. Heimbecker does not allege that Mr. Drudge failed to inve - tigate the statements concerning "Senator Kennedy and his staff" (Pl.'s Third Am. Compl.).

unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Harte-Hanks v. Connaughton*, 491 U.S. 657, 666 (1989) (quotations and citations omitted). Actual malice is a fault standard, not a negligence standard, predicated on the need to protect public discourse from being muffled. *Times v. Sullivan*, 376 U.S. at 288; *Tucker v. Phila. Daily News*, 577 Pa. 598, 625, 898 A.2d 113, 130 (Pa. 2004).

Mr. Heimbecker's pleadings are devoid of any facts indicating that Mr. Drudge knew or recklessly disregarded the falsity of the "serial litigant" statement; but they are replete with references to Mr. Drudge's alleged negligent reporting. Mr. Heimbecker alleges that "defendant failed to act with due and reasonable care by failing to obtain any documentation confirming the allegation that appellant was a "serial litigant" and that he "knew or should have known from the public record that Mr. Heimbecker is not a serial litigant" (Pl.'s Third Am. compl. ¶ 32). In spite of his allegations of negligent reporting, Mr. Heimbecker does not plead any facts to support these allegations.

Even if Mr. Drudge's actions could be characterized as negligent, which this court has not seen in this record, negligent reporting does not amount to actual malice. The Pennsylvania Supreme Court emphasized this point in *Tucker v. Philadelphia Daily News*, when the public figure plaintiffs sued two newspaper companies for reporting that plaintiffs were seeking ten million dollars in damages to their sex life in their lawsuit against members of the music industry. 848 A.2d 113 (Pa. 2004). The plaintiffs argued that the newspapers failed to properly investigate the story or interview the best sources, ignored a press release by the

plaintiffs and relied on a biased statement by an opposing attorney. The Pennsylvania Supreme Court held that such reporting, even if it was not ideal, failed to establish actual malice. *Id.* at 135-136.

Moreover, Mr. Heimbecker has provided no information that Mr. Drudge did not investigate whether or not he was a "serial litigant." If Mr. Drudge did investigate the Capitol staffer's comment that Mr. Heimbecker's was "serial litigant" he would have undoubtedly discovered that Mr. Heimbecker has a lengthy, redundant, and persistent history of inititating lawsuits over a period of 40 years. Thus, he is a "serial litigant."

3. *Mr. Heimbecker showed no evidence that Mr. Drudge knowingly or had recklessly believed that anyone would read the article and conclude that Mr. Heimbecker was a "political tool" of Senator Kennedy.*

It strains the plain reading of the article to say that it inferred that Mr. Heimbecker was Senator Kennedy's "political tool." More significantly, there is not a scintilla of evidence to show that Mr. Drudge wrote the article intending to infer that Mr. Heimbecker was Senator Kennedy's "political tool" and knowing that it was false or "with reckless disregard of whether it was false or not." *Times v. Sullivan*, 376 U.S. 254. 271,279-80 (1964). Consequently, the requisite actual malice was not shown; defeating the "political tool" defamation claim.

F. *As a Matter of Law the Statements at Issue Are Not Capable of Defamatory Meaning.*

At trial, Mr. Heimbecker bears the burden of proving the defamatory character of the alleged libelous statement. See 42 Pa.C.S. 8343 (a); *Weaver v. Lancaster*, 592 Pa. 458,

465-66, 926 A.2d 899, 903 (Pa. 2007); *Am. Future Sys. v. Better Bus,* 592 Pa. 66, 84, 923 A.2d 389, 400 (Pa. 2007); *Corabi v. Curtis Pub Co.,* 441 Pa. 432, 273 A.2d 899 (Pa. 1971). Mr. Heimbecker asserts that the statements made in the article convey "directly that...Mr. Heimbecker was a 'serial litigant'" and that they imply "that Mr. Heimbecker was a political tool of Senator Kennedy and his staff" (Pl.'s Third Am. compl., ¶ 28; Denied in def.'s answer to Pl.'s Third Am. compl., ¶ 28). Whether an allegedly libelous statement is susceptible to a defamatory meaning is a question of law. "[I]t is the function of the court, in the first instance, to determine whether the communication complained of is capable of a defamatory meaning" *Corabi v. Curtis Pub.,* 441 Pa. 432, 442, 273 A.2d 899, 904 (Pa. 1971) (discussing the test and factors to be considered when determining whether a statement is capable of defamatory meaning).

To answer this question, the court considers "whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Tucker v. Phila. Daily News,* 577 Pa.598, 615, 898 A.2d 113, 124 (Pa. 2004). In doing so, the court considers the statements in context. *Id.* "The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same signification that other people are likely to attribute to them." *Corabi v. Curtis Publishing,* 441 Pa. 432, 447, 273 A.2d 899, 907 (Pa. 1971) (citing *Boyer v. Pitt Publishing,* 324 Pa. 154, (1936)). Here, the statements at issue simply are not susceptible to a defamatory meaning.

*1. As a matter of law, the evidence offered by Mr. Heimbecker is constitutionally insufficient to support a defamation claim.*

As a preliminary matter, the evidence that Heimbecker offers to support his claim of defamatory meaning is constitutionally deficient. In *Times v. Sullivan*, the United States Supreme Court found that since testimony of the plaintiff's witnesses in that case established that none believed the allegedly defamatory statements, "the evidence presented in [the] case is constitutionally insufficient to support the judgment for [the plaintiff]." *Times v. Sullivan*, 376 U.S. at 265. As in *Times*, Mr. Heimbecker's evidence is constitutionally insufficient. Mr. Cosgrove and Mr. Zaleski, individuals who were co-parties to litigation with Mr. Heimbecker, both state by affidavit that,

> Upon reading the statement published by Matt Drudge referring to Mr. Heimbecker as a "serial litigant" my positive opinion of Mr. Heimbecker was not negatively affected because *I know him personally and did not believe the defamatory accusation.* Rather I believe the allegation to be unfair and outrageous (Pl.'s supplemental resp. to def.'s mot. for summ. J., Ex. D (citing Cosgrove aff. ¶ 3; Zaleski aff. ¶ 3;)) (emphasis added).

Mr. Heimbecker's affiants confirm that his reputation was not damaged, and the mere fact that Mr. Heimbecker's colleagues viewed the statements as "outrageous" is insufficient to make the statement libelous.

*2. The term "serial litigant" is not capable of defamatory meaning.*

The portion of the article that refers to Mr. Heimbecker as a "serial litigant" states:

> In the 2004 case, Mr. Heimbecker not only filed a request for Alito to recuse himself but also the entire Third Circuit as well.

> One Capitol Aide aware the [sic] situation challenged Mr. Heimbecker's credibility. *"The individual who filed this complaint is clearly a serial litigant.* It will be interesting to see how far the Democrats will push this and what the mainstream media will make of it" (Pl.'s third am. compl., Ex. Four) (emphasis added).

The term "serial litigant" in this context is simply not susceptible to a defamatory meaning.

The Supreme Court of Pennsylvania has set a high bar for plaintiffs claiming that a particular statement is susceptible to a defamatory meaning:

> Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable.... It is not enough that the victim of the [statements]...be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society *Tucker v. Phila. Daily News,* 577 Pa. 598, 615, 848 A.2d 113, 124 (Pa. 2004) (internal quotations and citations omitted). See also *Greenbelt Coop. v. Bresler,* 398 U.S. 6, 13-15 (rhetorical hyperbole and vigorous epithets were not capable of defamatory meaning).

Mr. Heimbecker's claims with respect to the

defamatory meaning of the statement are contradictory and unreasonable. Mr. Heimbecker suggests that the "serial litigant" statement "implies the individual has filed numerous frivolous and meritless actions causing the court to ban access," or "implies that an individual is suffering from a mental illness" (Pl.'s mot. for partial summ. J. as to def.'s affirmative defenses and new matter, 3). Mr. Heimbecker also suggests that since Mr. Drudge did not define the term "serial litigant," readers would "apply the plain meaning of the term and conclude that the plaintiff was a "loon" (Pl.'s third am. compl. ¶ 35).

The evidence that Mr. Heimbecker offers in support of his claim actually shows the statements did not "lower him in the estimation of the community" or "deter third parties from associating or dealing with him" as required under Pennsylvania law. See *Tucker v. Phila. Daily News,* 577 Pa. 598, 615, 848 A.2d 113, 124 (Pa. 2004). Two of Mr. Heimbecker's colleagues stated, "Upon reading the statement published by Matt Drudge referring to Mr. Heimbecker as a 'serial litigant' my positive opinion of Mr. Heimbecker was not negatively affected..." (Pl.'s supplemental resp. to def.'s mot. for summ. J., 14 (citing Cosgrove aff. ¶3; Zaleski aff. ¶3)).

Nor is the statement defamatory considering "the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 447, 273 A.2d 899, 907. As discussed above, the plain meaning of the term serial litigant indicates merely that the person whom it describes is a person who carries on a series of lawsuits over a period of time. The article's quote does not make representations about the merits of the litigation, the mental state of the person that the term describes,

or whether the litigation took place in one or several jurisdictions. It does not carry any negative connotation about the person bringing the lawsuits.

3. *The article does not state, or imply, that Mr. Heimbecker is a "political tool" of Senator Kennedy.*

Mr. Heimbecker also claims that "the statements contained in the article were intended to and did convey to the readers thereof, by implication, that...Mr. Heimbecker was a political tool of Senator Kennedy and his staff..." (Pl.'s third am. compl., ¶28; Denied in def.'s answer to pl.'s third am. compl., ¶28).[26] Mr. Heimbecker fails to plead any fact by which a reasonable jury could find that the article portrays or implies that Mr. Heimbecker is a political tool.

Nowhere in the article's passages does Mr. Drudge use the term "political tool" or make any association between Mr. Heimbecker and Kennedy (Def.'s mem. of law in support of def.'s mot. for summ. J., 16). Viewing the facts in the light most favorable to Mr. Heimbecker, the article—at most—can only be read to show that Senator Kennedy raised Justice Alito's failure to list Mr. Heimbecker's general Third Circuit recusal request in his judicial questionnaire (possibly after he learned about it from receiving one of Mr. Heimbecker's letters on the topic) as a reason to challenge his confirmation.

The article clearly states that Senator Kennedy's

---

26. Mr. Heimbecker also alleges that "the defendant's article, which falsely associates the plaintiff with Senator Ted Kennedy, gave additional credence to the "serial litigant" remark by inferring that the sole purpose of the complaint was to assist Kennedy in preventing the Honorable Samuel Alito from taking the bench" (Pl.'s Mem. of Law in Support of Pl.'s Resp. to Def.'s Mot. for Summ. J., 13). However, Mr. Heimbecker makes no attempt to support this allegation.

"office" was behind an effort to stop Alito's confirmation "using a 2004 recusal request." There is no indication that Mr. Heimbecker acted at the direction of Senator Kennedy or Mr. Flug, or that he had any association with them. No reasonable jury could find that the article implies Mr. Heimbecker is a political tool of Kennedy. Moreover, being associated with the late Senator Kennedy does not constitute defamation.

G. *Mr. Heimbecker's Failure to Present Evidence Sufficient to Support a Finding of Reputational Harm or Actual Malice Bars His Right to Recover Punitive Damages.*

Mr. Heimbecker sought solely punitive damages[27] against Mr. Drudge.

Federal constitutional law limits the ability of a plaintiff—both public figures or private figures—to recover punitive damages in a state law defamation action. Because Mr. Heimbecker has failed to produce evidence that could support a finding of actual malice, he is precluded from recovering punitive damages even if he were found to be a private figure plaintiff. Since he did not show any evidence of malice, his claim for damages should fail. In addition, he failed to show any evidence

---

27. He asks the court to "enter judgment in his favor in the amount in excess of $1,000,000.00 together with a published retraction of the defamatory article, a written apology, punitive damages, costs, interest and attorney's fees" (Pl.'s Third Am. Compl., ¶ 80). He further alleges that as a "direct and proximate result of the false and misleading and malicious statements of defendant Drudge to plaintiff's family and neighbors, plaintiff has suffered and continues to suffer serious and irreparable injury to his name and reputation, personal humiliation, mental anguish and suffering" (Pl.'s Third Am. Compl., ¶ 80). As he has not asserted a claim for compensatory damages against Mr. Drudge, this court need not reach the issue of whether Mr. Heimbecker may recover compensatory damages.

of reputational damage that he suffered. Having no valid claim for damages, summary judgment is appropriate.

Under federal constitutional law, a public figure plaintiff may not recover damages in a defamation action unless he proves actual malice. The United States Supreme Court in *Bradstreet v. Greenmoss Builders,* made clear that:

> [A] public official cannot recover damages for a defamatory falsehood unless he proves that the false statement was made with 'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not. In later cases, all involving public issues, the court extended this same constitutional protection to libels of public figures. *Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 755 (citing *NY Times v. Sullivan*, 376 U.S. 254, 271 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967)) (internal citations omitted).

Private figure plaintiffs must also establish that the defendant in a defamation action published the libelous statements with actual malice in order to recover punitive damages.[28] The Pennsylvania Superior Court has held,

> In the context of a private figure libel suit, while liability may be decided by any standard which necessarily

---

28. Mr. Heimbecker cannot recover punitive damages because he fails to allege facts that could support a finding of common law malice by a preponderance of the evidence; an additional prerequisite to recovery of damages in defamation suits by public plaintiffs. See, *Sprague v. Walter*, 656 A.2d 890, 922-23 (Pa. Super. 1995). Common law malice refers to "outrageous...malicious, wanton, reckless, willful, or oppressive behavior toward the plaintiff by the defendant. *Sprague v. Walter*, 656 A.2d 890,922 (Pa. Super. 1995); *DiSalle v. P.G. Pub. Co.*, 544 A.2d 1345,1370 (Pa. Super. 1998). The record is devoid of evidence from which a jury could conclude, by a preponderance of the evidence, that Mr. Drudge acted in a way that constitutes common law "malice."

involves a finding of fault, punitive damages may not be allowed unless there has been a showing of knowledge of falsity or reckless disregard for the truth. *DiSalle v. PG Publishing,* 544 A.2d 1345, 1365 (Pa. Super. 1998) (citing *Gertz v. Robert Welch,* 418 U.S. 323, 349 (1974)).

Even if he were a private figure plaintiff, Mr. Heimbecker would have to prove actual malice because he is suing Mr. Drudge over statements that relate to a matter of public concern. The United States Supreme Court in *Bradstreet v. Greenmoss Builders,* clarified its jurisprudence on this point:

> In *Gertz v. Robert Welch, Inc.,* 418 U.S. 232 (1974), we held that the First Amendment restricted the damages that a private individual could obtain from a publisher for a libel that involved a matter of public concern. More specifically, we held that in these circumstances the First Amendment prohibited awards of presumed and punitive damages for false and defamatory statements unless the plaintiff shows 'actual malice,' that is, knowledge of falsity or reckless disregard for the truth. *Bradstreet v. Greenmoss Builders,* 472 U.S. 749,751(1985).

Even if Mr. Heimbecker were able to show actual malice, he cannot show damage to his reputation. Although he complains that "as a result [of Mr. Drudge's publication], the plaintiff has suffered in his reputation, feelings and peace of mind, to his great personal loss and damage", he failed to demonstrate any damage (Pl.'s Third Am. Compl. ¶35 (citing Ex. 5)). The evidence offered by Mr. Heimbecker actually proves that the publication has not caused him harm to his reputation. Mr. Heimbecker asserts

that "the plaintiff's own business associates and friends will testify that 'upon reading the statement published by [the defendant] referring to [the plaintiff] as a 'serial litigant' their positive opinion of [the plaintiff] was not negatively affected because [they] know him personally and did not believe the defamatory accusation. Rather [they] believe the allegation to be unfair and outrageous" (Pl.'s supplemental resp. to def.'s mot. for summ. J. (citing Cosgrove aff., ¶ 3; Zaleski aff., ¶ 3)).

In *Times v. Sullivan* the United States Supreme Court held that testimony by those who read the allegedly defamatory statements, who stated they did not believe the statements, could not support a judgment for the plaintiff. *Times v. Sullivan*, 376 U.S. 254, 260, 265-88 (1964). As in *Times v. Sullivan*, Mr. Heimbecker's affiants do not believe the defamatory statements. Therefore, the evidence Mr. Heimbecker produces is insufficient to support his libel claim.

Since Mr. Heimbecker failed to produce evidence of actual malice or actual damage to his reputation stemming from the "serial litigant" comment or any inference that he was working with Senator Kennedy's office to challenge Justice Alito's confirmation, summary judgment on his damages claim was appropriate.

## V. CONCLUSION

Free speech and press are the lifeblood of democracy. Without them democracy inevitably would fail. If all press were required to be flattering or approved by the person about whom it refers, such censorship would deaden the public's interest, and obstruct active, intelligent involvement in government and public issues. True democracy depends upon free speech and press to

ensure civic input and oversight of government even at the risk that some publications may embarrass or include inadvertent errors. Maliciously and recklessly publicized lies about public figures or topics are not protected but honest efforts to inform are constitutionally protected.

There can hardly be a topic more fundamental to our system of justice than who is selected as one of nine justices for a lifetime appointment on the highest court in the nation. Mr. Heimbecker voluntarily inserted himself into what was already a topic of societal import: Justice Alito's Senate confirmation hearings for the United States Supreme Court. By seeking to publicize his recusal motion against the entire Third Circuit, of which then Judge Alito was a member, and his subsequent judicial misconduct complaint, Mr. Heimbecker chose to become a limited public figure. A public figure cannot contribute to the conversation about an important topic and then demand that any response he deems distasteful be muzzled. Mr. Heimbecker was agreeable to some of The Drudge Report's article, and even notified others of its publication, but when he became affronted by other aspects, he sought redress from Mr. Drudge with a defamation claim.

The United States and Pennsylvania courts have held that the Constitution requires that public figures must satisfy a higher burden in state defamation claims. Since Mr. Heimbecker has failed to prove any evidence, much less clear and convincing evidence, that the published statements were false, made with malice, were defamatory or damaging, his claim does not meet legal requirements and must fail. Having failed to meet such minimal requirements, this court granted Mr. Drudge's motion for summary judgment.

Given that free speech and press might be hindered by people fighting meritless lawsuits and open public debate consequently self-censored, summary judgment should be granted when a plaintiff has failed to provide the requisite evidence of defamation. See, e.g., *First Lehigh Bank v. Cowen*, 700 A.2d 498, 502 (Pa. Super. 1997). This court's grant of appellee, Mr. Drudge's, motion for summary judgment should be affirmed. To do otherwise would result in an unconstitutional and detrimental chilling effect on the press.